# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **NAIYANA V. GRAVELY, D.O.** | : | |
| 25251 Hilltop Drive | | |
| Beachwood, OH 44112 | : | |
| | | |
| Plaintiff, | : | |
| -vs- | | |
| | : | |
| | | |
| **ALAINA M. THIEL, M.D.** | : | |
| 14603 Lake Avenue | | |
| Lakewood, OH 44107-1328 | : | **COMPLAINT** |
| | | |
| and | : | |
| | | Trial by Jury Endorsed Hereon |
| **KATHLEEN M. FAY, M.D.** | : | |
| 2663 Palmer Lane | | |
| Avon, OH 44011-2073 | : | |
| | | |
| and | : | |
| | | |
| **MELANIE K. BORTELL, D.O.** | : | |
| 3211 Congress Lake Road | | |
| Mogadore, OH 44260-9761 | : | |
| | | |
| and | : | |
| | | |
| **CYNTHIA S. KELLEY, D.O.** | : | |
| 141 N. Forge St. | | |
| Akron, OH 44304 | : | |
| | | |
| and | : | |
| | | |
| **PAUL D. CHENOWITH, D.O.** | : | |
| 700 White Tail Ridge Dr. | | |
| Fairlawn, OH 44333-3290 | : | |
| | | |
| and | : | |
| | | |
| | : | |

1

**SUMMA HEALTH SYSTEM**            :
  141 N. Forge St.
  Akron, OH 44304                      :

                           Defendants. :

## NATURE OF THE ACTION

1. This is an action instituted under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e-1, *et seq.*, as amended (2022 Supp.) and the Ohio Civil Rights Act, Ohio Revised Code §§ 4112.01, *et seq.*, (2022 Supp.) to vindicate state and federally protected rights against unlawful employment practices on the basis of race and retaliation.

## JURISDICTION AND VENUE

2. Jurisdiction is invoked pursuant to Section 706(f) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-6(f) (2022 Supp.) (hereinafter referred to as "Title VII") and supplemental jurisdiction over asserted state law claims pursuant to 28 U.S.C. § 1367.

3. With respect to race and retaliation claims under Title VII, jurisdiction arises pursuant to receipt of a Notice of Right to Sue issued on August 8, 2022. The notice accompanies this complaint and is incorporated by reference as Exhibit A.

4. Venue in this Court is proper because the unlawful employment practices alleged were committed within the jurisdiction of the United States District Court for the Northern District of Ohio, Eastern Division.

## PARTIES

5. Plaintiff Naiyana V. Gravely ("Gravely") is an African American female and was an employee of Summa Health System who had her employment terminated based upon her race and in retaliation for her prior complaints against Summa Health System based on race.

6.    Defendant Alaina M. Thiel (hereinafter "Thiel") was one of the chief residents at Summa Health and took an active role in the discrimination and retaliation against Gravely.

7.    Defendant Kathleen M. Fay (hereinafter "Fay") was one of the chief residents at Summa Health and took an active role in the discrimination and retaliation against Gravely.

8.    Defendant Melanie K. Bortell (hereinafter "Bortell") was one of Gravely's direct supervisors who discriminated and retaliated against Gravely.

9.    Defendant Cynthia S. Kelley ("Kelley") is an employee of Defendant Summa Health System who was involved in the discrimination and retaliation against Gravely.

10.    Defendant Paul Chenowith ("Chenowith") is an employee of Defendant Summa Health System who was involved in the discrimination and retaliation against Gravely.

11.    Defendant Summa Health System ("Summa") is an employer as defined by Title VII and by the Ohio Civil Rights Act and at all relevant times was the employer of the Plaintiff.

## STATEMENT OF THE FACTS

12.    Plaintiff Naiyana V. Gravely reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

13.    Gravely graduated from the Ohio University Heritage College of Osteopathic Medicine medical school in 2020.

14.    During her time as a medical student at Ohio University, Gravely was the recipient of the John A. Brose Scholarship which funded a significant portion of her medical school education.

15.    A requirement of the scholarship is that Gravely complete her medical training and serve residents of Ohio for at least five years, among other requirements.

16.    Failure to meet the scholarships requirements could result in her being forced to pay back her medical school tuition.

17.    From December 30, 2019, through January 12, 2020, Gravely took part in a two-week audition rotation with Summa Health System.

18.    An audition rotation is an evaluation process by which a hospital can evaluate an applicant and determine if they are a good fit for their residency program.

19.    Gravely received glowing reviews during her two-week audition.

20.    Gravely came to the Summa Akron Family Medicine Residency Program highly recommended.

21.    Gravely received high praise for her performance during her family medicine audition rotation with Summa as well as the same distinction in her internal medicine, pediatrics, and psychiatry rotations.

22.    On March 12, 2020, Gravely matched with Summa, meaning that she would perform her residency with Summa for four years.

23.    A residency is required for a doctor to become fully licensed to practice medicine. Residents are employees of the hospital for which they are a resident.

24.    Gravely scored high on her incoming practice in-training exam ("ITE") and scored very well on her in-service exam+ (ISE+/ ACOFP).

25.    This is a standardized assessment of knowledge used to compare a resident's progress toward program completion and a practice resident's readiness.

26.    Gravely also performed well on her Objective Structured Clinical Examination (OSCE), which assesses competency by testing through direct observation and on her Osteopathic Manipulative Medicine OSCE.

27.    Dr. Gravely performed well through her training overall.

28.    The residency program is comprised of numerous rotations with different departments.

29.    For example, a resident will spend some time with the internal medicine department, emergency medicine department, pediatric department and family medicine department, among others.

30.    After Gravely's Internal Medicine rotation in July 2020, her first rotation as a family medicine resident, Gravely reached out by email to Dr. Shannon Perkins, Ph.D., faculty psychologist, regarding her treatment during the rotation.

31.    Gravely forwarded Dr. Perkins a letter dated August 1, 2020, where Dr. Gravely detailed unequal treatment, micro-aggressions, and bias which she had experienced during her Internal Medicine Team month rotation.

32.    After arriving for her family medicine rotation, her second month as a family medicine resident, Gravely realized that she was being targeted and treated differently than similarly situated Caucasian residents.

33.    The two chief residents, Dr. Kathleen M. Fay and Dr. Alaina M. Thiel, both Caucasian females, treated Gravely more harshly based upon her race.

34.    Fay and Thiel took every opportunity to humiliate Gravely and scrutinize her work more closely than other Caucasian residents.

35.    Gravely was one of only two African American residents in the program.

36.    In August 2020, Gravely made a formal complaint of discriminatory treatment.

37.    Gravely met with Dr. William Smucker ("Smucker").

38.    Gravely explained to Smucker about the discriminatory treatment she faced.

39.    Gravely also complained to Dr. Rebecca Teagarden ("Teagarden") in August 2020 regarding her discriminatory treatment.

40.    Gravely specifically referenced Dr. Thiel and Dr. Fay to both Smucker and Teagarden.

41.    Gravely explained that she had been intentionally picked on and targeted in terms of treatment and evaluations based upon her race.

42.    Once she complained, Gravely's superiors commenced a pattern of retaliation against her.

43.    Following her complaint, a report written about Gravely states "her breath of medical knowledge is below where I would expect her to be". The report continues on, "What needs urgent attention is how Naiyana is characterizing her experience. She labeled her time on FMIS as being full of micro-aggressions. She believed she was "alienated" and that feedback was not given in a respectful manner. On more than one occasion, she brought up the fact that she is a black female, that she is older (42), and that she was a victim in the process. I recall one time in which she inserted the term racism… So, in my opinion, this requires professional help immediately."

44.    Instead of investigating Gravely's allegation of discrimination, her allegations were turned into her needing "professional help."

45.    In lieu of properly addressing Dr. Gravely's concerns, her superiors began the narrative that she could not accept feedback and was difficult to work with.

46.    Gravely's evaluations within the family medicine rotation were all positive prior to her presenting her complaint.

47.    Gravely's numerous prior rotations were all met with positive reviews and no issues.

48.    Gravely had no prior complaints about her demeanor or ability to accept feedback.

49.    On August 30, 2020, Dr. Yoleeta Ilodi, Summa's Diversity and Inclusion coordinator, spoke with Dr. Gravely.

50.    Dr. Gravely, once again, reiterated her concerns about unequal treatment.

51.    Dr. Ilodi acknowledged to other Summa administrators that they may not be viewing claims of discrimination in an appropriate manner.

52.  Dr. Gravely also complained to Dr. Paul Chenowith on October 13, 2020, about the discriminatory treatment she had faced.

53.  Chenowith was Gravely's assigned advisor and was an attending physician in the residency program.

54.  On November 3, 2020, Gravely met with one of her direct superiors, Dr. Melanie K. Bortell.

55.  At the meeting, Gravely was put on the defensive for alleging that she had been discriminated against.

56.  After gravely had accused Dr. Thiel and Dr. Fay of treating her unfairly because of her race, Bortell screamed at Gravely and stated, "How is it fair that they have to walk around here and have people think that they are racist?"

57.  At no point did Dr. Bortell contemplate that these two Caucasian females may have been discriminating against Gravely.

58.  On December 16, 2020, Dr. Zeba Khalid, a co-worker of Gravely, submitted a written communication to Dr. Ilodi regarding the unequal treatment exhibited towards Gravely by Fay and Thiel.

59.  On January 13, 2021, an anonymous communication was submitted to Dr. Ilodi regarding the unequal treatment exhibited towards Gravely by Fay and Thiel.

60.  Both the December 16, 2020 and the January 13, 2021 communications were forwarded to Dr. Cynthia Kelley.

61.  Kelley was in charge of the entire Summa Akron residency program.

62.  Upon information and belief, no action was taken based upon either the December 16, 2020 or the January 13, 2021 communication.

63.    Throughout November 2020, Gravely continued to face harassment and discrimination from Fay and Thiel.

64.    Gravely was told by Thiel she was being pulled from a required rotation only to find out that was not true.

65.    This was done to harass and intimidate Gravely.

66.    Dr. Gravely also requested that Drs. Thiel and Fay not be part of her evaluation process.

67.    This request was ignored even though Thiel and Fay were aware of Gravely's accusations.

68.    On November 19, 2020, Gravely received her initial six-month evaluation.

69.    On November 24, 2020, Gravely met with Chenowith and Bortell.

70.    Prior to November 24, 2020, Chenowith had given Gravely positive feedback and had congratulated on her performance thus far in the program.

71.    At the meeting, Gravely once again reiterated her complaints of discrimination related to Thiel and Fay.

72.    On December 3, 2020, Bortell began to question Gravely's abilities.

73.    This is only after Dr. Gravely formally complained about her treatment and had already been berated by Bortell.

74.    Bortell targeted Gravely as retaliation her prior complaints.

75.    For example, paper evaluations from other rotations were routinely accepted and reviewed for residents.

76.    Following Gravely's complaints, Bortell chose to not accept her positive paper evaluations from the Akron Children's Hospital.

77.    Gravely raised the concern to her superiors that the comments from these evaluations were disregarded in her six-month evaluation.

8

78.    Gravely was told they would not be using her paper evaluations.

79.    Paper evaluations were considered and accepted for Gravely's non-African American counterparts who had not complained of discrimination.

80.    The ignored evaluations were very positive reviews.

81.    Numerous other evaluations were also not considered for Dr. Gravely without cause.

82.    On December 10, 2020, Gravely received an email written by Dr. Bortell, which had also been forwarded to all 75 residents, attending physicians and staff in the Family Medicine Center. The email was directed at Gravely and pointed out that she was the only resident would not advance to the next stage of the residency program.

83.    At the time, Gravely had not been informed that she would not be permitted to work independently and advance in the program.

84.    The email was sent to embarrass and harass Gravely.

85.    On December 15, 2020, Gravely submitted another complaint regarding her discriminatory and retaliatory treatment.

86.    Gravely submitted a "Safecare" complaint which describes the discrimination she was facing as well as the retaliation she had been subject to as a result of her complaints.

87.    On December 21, 2020, just days after submitting her Safecare complaint, Gravely was informed that her six-month evaluation, which had already been completed and was received by her on November 19, 2020, was being replaced and that her course correction plan was being replaced with a remediation plan.

88.    The decision to change the sixth-month evaluation and place Gravely on a remediation plan was made by Bortell, Chenowith and Kelley.

89.   Gravely was punished for complaining and reporting discriminatory activity within Summa.

90.   Although she was informed she would receive a "new" six- month evaluation, she did not actually receive it until February 2021.

91.   The new six-month evaluation contained rotation feedback from a period outside of the scope of review for all other Caucasian residents.

92.   The new six-month evaluation took away her ability to see patients without direct supervision and was considered a demotion.

93.   This type of change in an already submitted six month-evaluation was unprecedented and deviated drastically from the process used for all of the Caucasian Summa Akron family medicine residents.

94.   A remediation plan is very serious and carried serious consequences.

95.   Although Dr. Gravely had already been promoted, Summa backtracked following her complaint of discrimination and took away the promotional opportunity.

96.   As of October 2020, Dr. Gravely was meeting her requirements.

97.   She had been advanced to indirect supervision (a milestone for advancement) and was performing well.

98.   After the complaint, her prior evaluations were altered and she was no longer deemed fit for indirect supervision of patients.

99.   On January 4, 2021, Gravely was informed by the head of the Family Medicine department that he had received her complaint.

100.  Dr. Gravely intentionally submitted it to Summa's general office as opposed to Family Medicine where she was experiencing discrimination.

10

101.  Following this submission, Gravely's reviews in family medicine diminished even further.

102.  On January 14, 2021, Dr. Justin Catlett ("Catlett") completed milestone evaluation cards for the week beginning on January 4, 2021.  Catlett's cards indicated that Gravely had met the required milestones and had performed well.

103.  On January 18, 2021, Gravely met with Bortell and two other doctors involved in the residency program. Gravely informed the group that Catlett had indicated Gravely had met her requirements and completed milestone cards reflecting that same information.

104.  Upon hearing that information, Bortell told Gravely that she would talk to Catlett about the milestone cards he completed.

105.  On January 21, 2021, Gravely met with Kelley regarding her formal complaint against Fay, Thiel and Bortell.

106.  On January 29, 2021, Catlett submitted his overall evaluations of Gravely.

107.  The evaluation Catlett submitted was more negative in comparison to all of his prior comments and reviews.

108.  Catlett's evaluation differed greatly from the positive milestone cards he had submitted on January 14, 2021, relating to the week he had spent reviewing Gravely.

109.  Bortell had followed through with her statement that she would "talk" to Catlett about his positive review of Gravely.

110.  Dr. Gravely was subsequently put on a second remediation plan.

111.  On April 25, 2021, Gravely filed a complaint with the Accreditation Council for Graduate Medical Education ("ACGME") regarding the discrimination and harassment she had experienced while in the Summa residency program.

112.  Although the complaint was filed on April 25, 2021, it was not delivered to Summa until May 28, 2021.

113.  On April 25, 2021, Dr. Rebecca Teagarden changed an outpatient evaluation of Dr. Gravely's from "no areas of concern" to "reflect areas of concern for medical knowledge" and other comments.

114.  On May 11, 2021, a positive review which had previously been given to Gravely by Dr. John DiSabato subsequently turned negative.

115.  These alterations to previously submitted evaluations violated Summa's policy regarding evaluations which stated they were not to be changed after submission.

116.  On May 18, 2021, Gravely met with Bortell and was told she would either be promoted to a second-year resident, have a delayed promotion upon further remediation or be required to repeat her first year.

117.  On May 24, 2021, residents and faculty were emailed the finalized comprehensive list of each resident's schedule for 2021-2022 which was to begin on July 1, 2021.

118.  The finalized schedule indicated that Gravely was being promoted to a second-year resident for the 2021-2022 term.

119.  On May 27, 2021, Bortell completed an attestation that Gravely was in good academic and professional standing.

120.  On May 28, 2021, Summa Health and the Summa Family Medicine Residency Program were notified of the ACGME complaint Submitted by Gravely on April 25, 2021.

121.  On June 1, 2021, four (4) days after Summa was notified about the ACGME complaint, Gravely was placed on administrative leave pending termination.

122. On June 1, 2021, Bortell recommended that Gravely be dismissed from the Family Medicine Residency Program.

123. On June 29, 2021, the original decision to dismiss Dr. Gravely was upheld by Dr. Cynthia Kelley.

124. Gravely was fired by Summa.

125. Gravely's termination from Summa's residency program deviated greatly from Summa's history of working with its residents prior to terminating their employment.

126. Summa has a history of permitting Caucasian residents who performed worse than Gravely numerous opportunities to remain in the program prior to dismissing them.

127. For example, Dr. Zoe Jones ("Jones"), a white female resident also had to remediate FMIS (family medicine). A closer look at the comparison between Dr. Jones' level of performance and Dr. Gravely's indicates that Dr. Jones had more issues than Gravely.

128. Jones, unlike Gravely, performed poorly on multiple standardized assessments and failed multiple rotations prior to being placed on a remediation plan.

129. Summa concluded that Jones was not able to perform at the level of independence expected of a second-year resident. Jones repeated FMIS 5 times and was not dismissed from the program.

130. Gravely repeated FMIS 1 time and was fired from Summa.

131. Dr. Kaleb Kenneaster ("Kenneaster"), a white male first-year resident, performed poorly on his practice ITE, was placed on an individual learning plan for medical knowledge, performed poorly on his OSCE (and other exams) and received "needs improvement" in areas that were evaluated.

132. Kenneaster, unlike Gravely, was advanced to perform virtual visits, advanced to indirect supervision of patients and was not placed on a remediation plan.

133. A culture of fear and pressure to not report discrimination issues has been a rampant problem within the Summa residency program.

134. For example, in May 2021, Gravely became aware that non-English speaking patients were being treated differently than Caucasian English-speaking patients.

135. Gravely brought the issue to Dr. Pratik Patel, a senior resident.

136. Patel and Gravely spoke with Allison Hill, the family medicine residency administrative Assistant, who warned Patel to not speak or complain about discrimination until after graduation. Presumably to avoid retaliation.

### Count I – Race Discrimination in Violation of Title VII of the Civil Rights Act

137. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

138. Plaintiff is a member of a protected class as an African American woman.

139. Plaintiff was discriminated against based upon her race.

140. Plaintiff was harassed and humiliated based upon her race.

141. Plaintiff was terminated based upon her race.

142. The acts and conduct of the Defendants were intentional, malicious and in wanton and reckless disregard of her rights and feelings.

143. As a result of the acts and conduct of the Defendants, Plaintiff suffered in the loss of her employment, ability to become a licensed physician, her salary, benefits, retirement and related matters.

144. As a result of the acts and conduct of the Defendants, Plaintiff has suffered serious, genuine and consequential damages including personal injury, pain, suffering, emotional harm, mental distress and loss of quality of life.

145.  The acts and conduct of the Defendants were intentional, malicious and in wanton and reckless disregard of the rights and feelings of the Plaintiff.

### **Count II – Retaliation in Violation of Title VII of the Civil Rights Act**

146.  Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

147.  Plaintiff engaged in protected activity by filing complaints of discrimination regarding her treatment while at Summa.

148.  Defendants were aware that Plaintiff had in engaged in protected activity.

149.  In retaliation for Plaintiff's complaints and filings, Plaintiff was targeted, harassed and had her employment terminated.

150.  Defendants intentionally ignored the allegations made by Plaintiff and as a result of those allegations, terminated her employment.

151.  There is a causal connection between Plaintiff's complaints regarding her discriminatory treatment and the termination of her employment and position within Summa's residency program.

152.  As a result of the acts and conduct of the Defendants, Plaintiff suffered in the loss of her employment, ability to become a licensed physician, her salary, benefits, retirement and related matters.

153.  As a result of the acts and conduct of the Defendants, Plaintiff has suffered serious, genuine and consequential damages including personal injury, pain, suffering, emotional harm, mental distress and loss of quality of life.

154.  The acts and conduct of the Defendants were intentional, malicious and in wanton and reckless disregard of the rights and feelings of the plaintiff.

**COUNT III- Discrimination and Retaliation in Violation of the Ohio Civil Rights Act**

155. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

156. Plaintiff is a member of a protected class as an African American woman.

157. Plaintiff was discriminated against based upon her race.

158. Plaintiff was harassed and humiliated based upon her race.

159. Plaintiff was terminated based upon her race.

160. Plaintiff engaged in protected activity by filing multiple complaints of discrimination regarding her treatment while at Summa.

161. Defendants were aware that Plaintiff had in engaged in protected activity.

162. In retaliation for Plaintiff's complaints and filings, Plaintiff was targeted, harassed and had her employment terminated.

163. Defendants intentionally ignored the allegations made by Plaintiff and as a result of those allegations, terminated her employment.

164. There is a causal connection between Plaintiff's complaints regarding her discriminatory treatment and the termination of her employment and position within Summa's residency program.

165. As a result of the acts and conduct of the Defendants, Plaintiff suffered in the loss of her employment, ability to become a licensed physician, her salary, benefits, retirement and related matters.

166. As a result of the acts and conduct of the Defendants, Plaintiff has suffered serious, genuine and consequential damages including personal injury, pain, suffering, emotional harm, mental distress and loss of quality of life.

167. The acts and conduct of the Defendants were intentional, malicious and in wanton and reckless disregard of the rights and feelings of the plaintiff.

### COUNT IV- Hostile Work Environment

168. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

169. Throughout her time in the family medicine rotation at Summa, Plaintiff was harassed and demeaned because of her race.

170. Plaintiff was further targeted by her superiors and Summa as a result of her engaging in protected activity.

171. As a result of the acts and conduct of the Defendants, Plaintiff suffered in the loss of her employment, ability to become a licensed physician, her salary, benefits, retirement and related matters.

172. As a result of the acts and conduct of the Defendants, Plaintiff has suffered serious, genuine and consequential damages including personal injury, pain, suffering, emotional harm, mental distress and loss of quality of life.

173. The acts and conduct of the Defendants were intentional, malicious and in wanton and reckless disregard of the rights and feelings of the Plaintiff.

WHEREFORE, Plaintiff respectfully requests the Court to grant the following relief:

A.  Declare that the acts and conduct of the Defendants, jointly and severally, constitute violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e-1, *et seq.*, as amended (2022 Supp.) and the Ohio Civil Rights Act, Ohio Revised Code §§ 4112.01, *et seq.*(2022 Supp.),

B.  Grant to the Plaintiff and against Defendant Summa Health System appropriate injunctive relief against Defendant, its officers, agents, employees, successors, assigns, and all persons in active concert of participation with it, from engaging in any

employment practices which discriminate or retaliate on the basis of race including, but not limited to, front pay;

C.      Grant to the Plaintiff and against Defendant Summa Health System an order to institute and to otherwise carry out policies, practices and programs which provide equal employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices;

D.      Grant to the Plaintiff and against Defendants, jointly and severally, relief to make the Plaintiff whole by providing appropriate back pay with prejudgment interest and for other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

E.      Grant to the Plaintiff against Defendants, jointly and severally, appropriate compensatory relief.

F.      Grant to the Plaintiff against Defendants, jointly and severally, appropriate punitive damages;

G.      Grant to the Plaintiff and against Defendants costs including statutory reasonable attorneys' fees as provided by statute;

H.      Grant such further relief as the Court deems just, equitable and in advance of the public interest.

_s/Jared S. Klebanow_
Jared S. Klebanow (0092018)
KLEBANOW LAW, LLC
701 The City Club Building
850 Euclid Avenue
Cleveland, Ohio 44114
P: (216) 621-8230
jklebanow@klebanowlaw.com

_s/Avery Friedman_
Avery Friedman (0006103)
AVERY FRIEDMAN & ASSOCIATES
701 The City Club Building
850 Euclid Avenue
Cleveland, Ohio 44114
P: (216) 621-9282
F: (216) 621-9283
avery@lawfriedman.com
fairhousing@gmail.com

_Attorneys for Plaintiff Naiyana V. Gravely_

## TRIAL BY JURY DEMANDED

Plaintiff Naiyana V. Gravely hereby demands trial by jury.

_s/ Jared Klebanow_
Jared Klebanow